IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 13-43-SLR |
| ) | |
| RASHAAN CHERRY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

At Wilmington this 23rd day of September, 2014, having considered defendant's motions for a *Franks* hearing and for disclosure of the identity of the confidential informant(s), the papers submitted and the argument presented in connection therewith, the court denies the motions based on the following reasoning.

1. **Background.** On April 11, 2013, a federal grand jury indicted defendant on one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (D.I. 13) On July 11, 2013, a federal grand jury returned a superseding indictment adding charges of possession with intent to distribute heroin and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (D.I. 22)

2. On January 2, 2014, defendant filed a motion to suppress evidence and statements. (D.I. 36) In addition to a host of suppression issues, defendant requested

a *Franks*[1] hearing and moved for disclosure of the identities of the confidential informant(s).

3. Rather than pursuing contemporaneous briefing of the motion, the parties requested extensions of time in which to file responsive papers. (D.I. 37, 39, 46, 53) The court granted the motions to continue and, subsequently, conducted periodic telephone conferences to monitor the status of the case. (D.I. 38, 40, 41, 43, 47, 55)

4. During a June 27, 2014 teleconference, the court set dates for the trial and pretrial conference. The court further scheduled an evidentiary hearing to address defendant's outstanding suppression motion and ordered the parties to submit letters identifying the pertinent issues. (D.I. 57)

5. In response, defendant asserts, inter alia[2], that a *Franks* hearing should be held to determine the credibility of Detective Robert Fox (affiant) in providing the probable cause in the affidavits for the warrants issued in the case. (D.I. 59, 64, 70, 71) To that end, he has submitted affidavits from two individuals ("B.H." and "D.H."), that defendant argues are Detective Fox's confidential informants. Defendant contends that a careful comparison of B.H. and D.H.'s affidavits with the representations made by Detective Fox demonstrates a substantial preliminary showing that false statements knowingly and intentionally, or with reckless disregard for the truth, were included by

---

[1]A *Franks* hearing is a hearing to determine whether a law enforcement officer's affidavit used to obtain a search warrant was based on false statements by the law enforcement officer. *Franks v. Delaware*, 438 U.S. 154 (1978).

[2]Defendant also challenged the propriety of: (1) the stop of the blue Acura; (2) the GPS search warrant and all subsequent warrants; (3) the blue Acura search warrant; (4) the silver Acura search warrant; (5) the cell phone search warrants; and (6) his statements made to law enforcement. (D.I. 59, 61)

2

Detective Fox in his affidavits. Defendant further avers that the identity of the confidential informant(s)' must be disclosed in order to confirm that CI-1 is B.H. and CI-2 is D.H., and to further evaluate the direct contrasts between the affidavits submitted and Detective Fox's representations.

6. Plaintiff counters that a *Franks* hearing is unnecessary because defendant has failed to make the requisite substantial preliminary showing of deliberately or recklessly false statements in the affidavit. (D.I. 62, 63, 65, 68, 69, 72) Plaintiff avers that disclosure of the confidential informant(s) is unwarranted as the role of the informant(s) was only to validate the search and defendant has failed to demonstrate how the informant(s)' testimony would assist in his defense. Further, plaintiff avers that disclosure of the identities would endanger the safety of CI-1 and CI-2.

3

7. Although the focus of the *Franks* dispute has taken a circuitous path,[3] the court returns to the crux of the dispute, whether the affidavits by B.H. and D.H.

---

[3]On Friday, August 15, 2014, the court held a teleconference to address questions concerning the evidentiary hearing scheduled for Monday, August 18, 2014. (D.I. 73) In pertinent part, the call transpired as follows:
> COURT: [I]t strikes me that the most reasonable process that I can engage in to focus this evidentiary hearing is to have an ex parte in-camera interview with Detective Fox on the record, you know, for purposes of appeal or whatever, in order for me to determine what the scope of the evidentiary hearing should be . . . .
> PLAINTIFF: Your Honor, the government is in agreement with the court's assessment. The government believes consistent with our filings that the defendant has not made a showing of, a substantial preliminary showing of deliberate or reckless falsehood that is material on behalf of the affiant . . . .
> COURT: Well, I'm not sure - - at the very least, I think perhaps we are not on the same page. I was suggesting that I interview Detective Fox, not simply have the government's lawyers come in and tell me who the confidential informants were. So I think we're slightly different, in camera.
> PLAINTIFF: The government understands from your perspective, and we agree with that, an in camera interview. Apologies if I suggested the government would be making a presentation of some sort.
> DEFENSE: Judge, I think you focused on the issue, but I respectfully disagree with the examination should be ex parte because I believe that my affidavit alleging that B.H was CI-1 and Herring was CI-2 . . .
> So the bottom line is, is that my request is, is that I would allow, be allowed to be present and be part of the examination of Detective Fox.
> COURT: Well, quite frankly, I don't want any lawyers there . . .

(*Id.* at 3-5) Prior to the conclusion of the teleconference, the government agreed to have Detective Fox available for questioning by the court at 9:00 a.m., prior to the start of the evidentiary hearing. (*Id.* at 8-9) On the hearing date, however, the government changed its position, without notice to the court. Specifically, the government asserted that the court's procedure for Detective Fox was fundamentally flawed as explained in *United States v. Tzannos*, 460 F.3d 128 (1st Cir. 2006), and would also obstruct its privilege to protect information under *Roviaro v. United States,* 353 U.S. 53 (1957). (D.I. 74 at 8-9) After a brief recess, the court concluded that the facts in *Tzannos* were fairly analogous to those at bar, so that the questioning of Detective Fox might confound the government's privilege to protect information under *Roviaro*. In order to allow defendant an opportunity to address the issue (in light of *Tzannos*), additional briefing was ordered and rulings on the *Franks* hearing and motion to disclose were postponed.

4

constitute a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by Detective Fox in the warrant affidavit to necessitate a *Franks* hearing. To that end, the analysis begins with an examination and comparison of Detective Fox's affidavit with the affidavits of D.H. and B.H.

8. **Search warrant affidavits**. In the search warrant affidavits, Detective Fox averred that, during the month of December 2012, he received information from a past proven reliable informant ("CI-1") about a high-level heroin supplier in the City of Wilmington, known as "Scrap" or "Cherry" (collectively as "Scrap"). (D.I. 36, ex. 2 at 00000047) According to CI-1, Scrap: (1) resided in the area of 9th and Jefferson Streets in Wilmington; (3) had a heroin supplier located in Philadelphia, Pennsylvania; (4) operated a blue Acura equipped with an interior piston-driven hidden compartment for the storage and transportation of heroin; (5) was under supervision by Delaware State Probation and Parole; and (5) was recently released from prison after serving time for drug offenses. (*Id.*) CI-1 positively identified Scrap as defendant. (*Id.* at 00000048)

9. With respect to CI-2, Detective Fox averred that, during the third week of February 2013, a past proven reliable informant ("CI-2") provided information about a major supplier of heroin in Wilmington known as "Scrap." (*Id.*) CI-2 positively identified Scrap as defendant. CI-2 stated that he had previously purchased heroin from defendant and defendant had arrived in the blue Acura. According to CI-2, defendant conducted the heroin transactions using a cell phone and gave Detective Fox the cell

5

phone number. On February 15, 2013, CI-2 conducted a "controlled purchase" of heroin from defendant. CI-2 was searched and provided law enforcement buy money by police. CI-2 called defendant on the cell number previously provided and arranged for the price and quantity of heroin to be purchased and set a location for their meeting. CI-2 wore a body wire and was under video and visual surveillance. A short time after arriving at the meeting location, a blue Acura appeared. CI-2 talked briefly with the driver, before handing over departmental buy money in exchange for an item. After the blue Acura drove away, CI-2 returned to law enforcement officers with the item, which later tested positive for heroin. (*Id.* at 00000049)

10. **The affidavits**. The affidavit[4] by "B.H" denies providing any information about defendant to Detective Fox in December 2012 through February 2013. (D.I. 49) In 17 paragraphs, which generally reference the statements made by Detective Fox in his affidavit, B.H. denies providing Detective Fox with any information about defendant, or about an individual known as "Scrap" or "Cherry." (D.I. 49) B.H. does not identify himself as CI-1.

11. In the second affidavit, D.H. denies informing Detective Fox about observing defendant conducting any drug transactions (either buying or selling) or meeting with any heroin buyers. (D.I. 60) He did not tell Detective Fox where he believed defendant was storing heroin or any type of controlled substances. D.H. also did not inform Detective Fox about what defendant would do before engaging in a drug transaction. In

---

[4]Accompanying the affidavit is correspondence from an investigator who interviewed B.H. in prison on May 14, 2014. (D.I. 49) Although the affidavit is not notarized, the investigator indicates that B.H. said all the information in the affidavit is accurate.

6

contrast to Detective Fox's narrative about the controlled buy, D.H. denies purchasing any controlled substances from defendant. D.H. does not identity himself as CI-2.

12. **Standard of review**. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that the Fourth Amendment requires that an evidentiary hearing be held to examine the truthfulness of a search warrant affidavit if a defendant first makes a "substantial preliminary showing" that: (1) the affidavit contains a material misrepresentation; (2) the affiant made the misrepresentation knowingly and intentionally, or with reckless disregard for the truth; and (3) the allegedly false statement was material to the finding of probable cause. Id. at 155-56.

13. There are several factors for the court to consider in determining whether a defendant has established a "substantial preliminary showing" for a Franks hearing:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any non-governmental informant.

Id. at 171.

14. The requirement of a substantial preliminary showing is intended to prevent the misuse of a veracity hearing for purposes of discovery or obstruction. Id. at 170-71;

7

*United States v. Stanton*, 566 Fed. Appx. 166, 168 (3d Cir. 2014) (the defendant's "guess as to the identity of the confidential informants does not constitute a 'substantial showing' required by *Franks*.'").

15. Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting, *United States v. Clapp*, 46 F. 3d 795, 801 n. 6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an officer withholds facts than any reasonable person would know that a judge would want to know. *Wilson*, 212 F.3d at 788. A court "may properly infer than an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." *United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011). A showing that the affiant acted with negligence or made an innocent mistake is not enough to establish that the affiant included a false statement or omitted material from it. *Franks*, 438 U.S. at 171.

16. If the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72.

17. Considering this authority in light of the record, the court finds that defendant has not made the substantial preliminary showing necessary to support a *Franks*

8

hearing. Significantly, while the affidavits of B.H. and D.H. deny any cooperation with Detective Fox, they do not present any facts from which the court can conclude that B.H. is CI-1 and D.H. is CI-2. Absent that link, there is nothing demonstrating that Detective Fox made false statements about the confidential informants in his search warrant applications.

18. **Motion to disclosure confidential informants**. In *Roviaro v. United States,* the Supreme Court recognized the government's privilege to withhold from disclosure the identity of confidential informants. 353 U.S. 53, 59 (1957). The Court held, however, that this privilege is not without limitations. *Id.* at 59-60. "Where the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

19. The first step in determining the necessity of disclosure is to "ascertain what need, if any, the defendant has alleged for disclosure." *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir.1981). It is the defendant's burden to establish the particular need for disclosure. *Id.* "A defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence . . . has not shown that disclosure will be 'relevant and helpful to the defense . . . or is essential to a fair determination' of the case." *United States v. Brown*, 3 F.3d 673, 679 (3d Cir.1993).

20. After a defendant provides a specific need for disclosure, the court must then balance the public interest in protecting the flow of information with the defendant's right to prepare for his defense. *Jiles*, 658 F.2d at 196; *Roviaro*, 353 U.S. at 62. In so

9

doing, the court should consider the crime charged, possible defense, significance of the informant's testimony, and any other relevant factors. *Id.* The Third Circuit has concluded that disclosure of an informant's identity is warranted where: "(1) the possible testimony is highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." *Id.* at 198-99. However, "[w]here an informant's role was in validating a search, disclosure of his identity is not required." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (citing *McCray v. Illinois*, 386 U.S. 300, 304 (1967)).

21. In conducting this balancing test, the court should also consider the possible risk of harm to the informant if his identity is revealed. *Id.* at 198. The risk to the informant, however, "cannot justify a deprivation of [a defendant's] right to a fair trial, [but] it does require close scrutiny of [a defendant's] need to have his counsel meet with the informant." *Jiles*, 658 F.2d at 198.

22. In light of this authority, the court finds that defendant has not shown that the confidential informant(s)' testimony is needed for any of the purposes that were recognized in *Jiles*. Instead, the uncontradicted record reflects that defendant wants the identities to prove his supposition that Detective Fox presented false and misleading information in the affidavits. At this juncture, however, defendant has not established how the testimony or information provided by the affiants would assist in this regard.

23. **Conclusion.** For the reasons stated, defendant's motions for a *Franks* hearing and for disclosure of confidential informants are denied. An appropriate order shall issue.

_____
United States District Judge